UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| TONY S. TYLER, JR., | * |
| | * |
| Plaintiff, | * |
| | *   CIVIL ACTION |
| v. | * |
| | *   DOCKET NO.: |
| HARBOR FREIGHT TOOLS USA, INC., | * |
| | * |
| Defendant. | * |
| | * |

## COMPLAINT AND DEMAND FOR JURY TRIAL

### PARTIES AND JURISDICTION

1. Plaintiff Tony S. Tyler, Jr., is a resident and citizen of the State of Maine.

2. Defendant Harbor Freight Tools USA, Inc., ("Harbor Freight") is a Delaware Corporation with a principal place of business in the State of California. At all relevant times, Defendant Harbor Freight was qualified to do business in the State of Maine, was in fact doing business in the State of Maine, and had sufficient minimum contacts with the State of Maine to subject it to the jurisdiction of this Court.

3. Defendant Harbor Freight advertises and sells goods in the State of Maine and has advertised and sold the Pittsburgh Automotive 6-ton jack stand, item number #61197 (hereinafter "the Subject Jack Stand(s)"), at issue in this case, in the State of Maine.

4. Defendant Harbor Freight derives substantial revenue from goods and products sold and used in the State of Maine, including the Subject Jack Stands.

5. Defendant Harbor Freight expects or should have expected its acts to have consequences within the State of Maine and derived substantial revenue from interstate

1

commerce relating to the Subject Jack Stands.

6. Defendant Harbor Freight regularly and persistently engaged in the business of marketing, distributing, and/or selling the Subject Jack Stands for use by consumers, including those within the State of Maine.

7. Defendant Harbor Freight is authorized to do business in the State of Maine and derives substantial income from doing business in the State of Maine.

8. Defendant Harbor Freight purposely availed itself of the privilege of conducting activities within the State of Maine, thus invoking the benefits and protection of its laws.

9. At all times relevant herein, Defendant Harbor Freight conducted substantial business in the State of Maine and purposely availed itself of the privilege of doing business in the State of Maine by knowingly marketing, distributing, selling, and shipping products—including the Subject Jack Stands—into the State of Maine for sale to consumers in that State. Further, this action arises from a tort committed in whole or in part within the State of Maine, relates to Defendant Harbor Freight's design, manufacture, testing, marketing, distribution, and/or selling of the Subject Jack Stands, and resulted in injuries in the State of Maine. Therefore, personal jurisdiction is proper as to Defendant Harbor Freight.

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because: (a) there is complete diversity of citizenship between Plaintiff and Defendant; and (b) the amount in controversy exceeds $75,000.

11. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391 because: (a) a substantial part of the events or omissions giving rise to this claim occurred in the State of Maine; (b) Defendant Harbor Freight does business in the State of Maine relating to the

allegations herein; and (c) Plaintiff resides in the State of Maine.

## FACTS

12. Defendant Harbor Freight operates more than 1,500 stores in at least 48 states, including Maine, that sell tools, the Subject Jack Stands.

13. On or about July 12, 2019, Tony Tyler purchased two of the Subject Jack Stands.

14. On or about March 11, 2023, Tony was using the two Subject Jack Stands to lift his pickup truck. While Tony was underneath the truck, one of the Subject Jack Stands gave way without warning and toppled over, causing the truck to fall on top of him. As a result, Tony sustained, *inter alia*, complex facial bone fractures, a partial tear of the supraspinatus tendon in the left shoulder, as well as nerve impingement and bursitis, endolaryngeal hematoma, hiatal hernia, traumatic brain injury, fracture of thyroid cartilage, associated pain and suffering, and significant emotional distress.

## COUNT I
## NEGLIGENCE

15. Plaintiff repeats and realleges each of the foregoing paragraphs as if set forth fully herein.

16. At all relevant times, Defendant Harbor Freight, by and through its agents, servants, employees, and affiliated companies, was engaged in the business of designing, manufacturing, testing, assembling, inspecting, marketing, distributing, and/or selling tools for consumer purchase and use.

17. Defendant Harbor Freight owed a duty to purchasers and/or users of its tools to exercise reasonable care in designing, manufacturing, testing, assembling, inspecting, marketing,

distributing, and/or selling its products.

18.     Prior to July 12, 2019, Defendant Harbor Freight designed, manufactured, tested, assembled, inspected, marketed, and/or distributed and placed the Subject Jack Stands into the stream of commerce.

19.     Defendant Harbor Freight breached its duty to Plaintiff by failing to exercise reasonable care in the design, manufacture, testing, inspection, distribution, and/or sale of the Subject Jack Stands.

20.     These breaches included, but were not limited to, designing, manufacturing, testing, marketing, distributing, and/or selling the Subject Jack Stands with a defect that caused their pawl to disengage from the extension lifting post, allowing the stand to drop suddenly.

21.     Defendant Harbor Freight breached the duty it owed to Plaintiff and was negligent in failing to warn Plaintiff of the risks and dangers that were known, or should have been known, to Defendant Harbor Freight, and that were reasonably foreseeable and inherent in the use of the Subject Jack Stands.

22.     As a direct and proximate cause of the negligence of Defendant Harbor Freight, Plaintiff suffered severe and permanent injuries, loss of enjoyment of life, emotional distress, lost earnings and earning capacity, and was forced to incur medical bills for his care and treatment. All of these damages will continue into the future.

COUNT II
STRICT LIABILITY PURSUANT TO 14 M.R.S. § 221

23.     Plaintiff repeats and realleges each of the foregoing paragraphs as if set forth fully herein.

24. At all relevant times, Defendant Harbor Freight, by and through its agents, servants, and employees, were engaged in the business of designing, manufacturing, testing, assembling, inspecting, marketing, distributing, and/or selling tools—including the Subject Jack Stands—for consumer purchase and use.

25. Prior to July 12, 2019, Defendant Harbor Freight designed, manufactured, assembled, inspected, marketed, and/or distributed and placed the Subject Jack Stands into the stream of commerce.

26. The Subject Jack Stands were intended for use in lifting and supporting consumer vehicles.

27. The Subject Jack Stands were designed, manufactured, inspected, distributed, and/or sold and placed into the stream of commerce by Defendant Harbor Freight in a defective and unreasonably dangerous condition.

28. Specifically, the Subject Jack Stands suffer from a design and/or manufacturing defect that causes their pawl to disengage from the extension lifting post, allowing the stand to drop suddenly.

29. Here, the pawl disengaged on one of the Subject Jack Stands used by Tony, which caused the jack stand to fall and allowed the truck to fall on top of him.

30. The Subject Jack Stands were in a defective and unreasonably dangerous condition at the time they left the facilities and control of Defendant Harbor Freight, and their condition was not significantly changed prior either to being sold on July 12, 2019, or the incident on March 11, 2023.

31. Plaintiff had no knowledge, or reason to know, of the defective condition of the Subject Jack Stands.

32. At all relevant times, the Subject Jack Stands were used in the manner and for the purpose intended.

33. As a result of the defective and unreasonably dangerous condition of the Subject Jack Stands, Plaintiff suffered severe and permanent injuries, loss of enjoyment of life, emotional distress, lost earnings and earning capacity, and was forced to incur medical bills for his care and treatment. All of these damages will continue into the future.

WHEREFORE, Plaintiff seeks judgment against Defendants for compensatory damages, interest, costs, attorney fees, and such other and further relief as this Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests that his claims be tried by a jury.


Date: March 10, 2025                    */s/ Trevor D. Savage, Esq.*
                                        Trevor D. Savage, Esq. ~ Bar No. 6028
                                        Benjamin R. Gideon, Esq. ~ Bar No. 9419
                                        *Attorneys for Plaintiffs*

                                        Gideon Asen LLC
                                        95 Main Street, # 5
                                        Auburn, ME 04210
                                        (207) 206-8982
                                        tsavage@gideonasenlaw.com
                                        bgideon@gideonasenlaw.com